IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-389-FDW-DCK

| | |
|---|---|
| KRISTIN NEESER, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) MEMORANDUM AND<br>) RECOMMENDATION |
| MAC ACQUISITION LLC, SULLIVAN'S HOLDING LLC, d/b/a SULLIVAN'S STEAKHOUSE, and SULLIVAN'S OF NORTH CAROLINA, LLC, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Reasserted Motion To Transfer Venue" (Document No. 59); "Sullivan's Of North Carolina, LLC's Second Amended Motion To Compel Arbitration And To Either Dismiss, Or Alternatively, To Stay" (Document No. 63); and Defendants MAC Acquisition LLC's And Sullivan's Holding LLC, d/b/a Sullivan's Steakhouse's Amended Reasserted Motion To Compel Arbitration And To Either Dismiss, Or Alternatively, To Stay" (Document No. 64). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are ripe for disposition.

Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion to transfer venue be granted and that the motions to compel arbitration be denied without prejudice.

### I. BACKGROUND

Kristin Neeser ("Plaintiff" or "Neeser"), through counsel, initiated this action with the filing of her "Complaint" (Document No. 1) on July 16, 2020. The original Complaint named MAC Acquisition LLC and Sullivan's Holding LLC d/b/a Sullivan's Steakhouse as Defendants,

and asserted claims under the Fair Labor Standards Act ("FLSA"), the North Carolina Wage and Hour Act ("NCWHA"), and the Family Medical Leave Act ("FMLA"). (Document No. 1).

Following Defendants' "Answer" (Document No. 12), Plaintiff filed a "…First Amended Complaint" (Document No. 13) on September 15, 2020. Defendants then filed a renewed Answer (Document No. 16) and Sullivan's of North Carolina, LLC filed a "Motion to Intervene" (Document No. 17).

On June 25, 2021, the Honorable Frank D. Whitney granted the "Motion to Intervene." (Document No. 22). In doing so, Judge Whitney found that Sullivan's of North Carolina, LLC ("SNC") was "a contracting party with Plaintiff by way of an employment arbitration agreement" and thus had "a significantly protectable interest at risk" and should be allowed to intervene to protect that interest. (Document No. 22, p. 8). After some delay, Defendants filed motions to compel arbitration and change venue, SNC filed an Answer, and the parties filed their "Certification And Report of F.R.C.P. 26(f) Conference And Proposed Discovery Plan" in September 2021. See (Document Nos. 24, 25, 27, 29, 30, and 34).

On December 14, 2021, the Court granted "Plaintiff's Unopposed Motion For Extension Of Deadline To Join Additional Parties Or To Amend Pleadings" (Document No. 47). (Document No. 48). "Plaintiff's Second Amended Complaint" (Document No. 55) was filed on January 24, 2022. The "…Second Amended Complaint" names MAC Acquisition LLC ("MAC"), Sullivan's Holding LLC d/b/a Sullivan's Steakhouse ("SH") and Sullivan's of North Carolina, LLC ("SNC") (all together "Defendants"), and asserts FMLA claims for interference and retaliation. (Document No. 55).

According to "Plaintiff's Second Amended Complaint" (the "Complaint") Kristin Neeser is a resident of Raleigh, North Carolina, and worked for Defendants at their Sullivan's Steakhouse

in Raleigh, from approximately May 1, 2013, until October 9, 2019. (Document No. 55, pp. 2-3). Plaintiff notes that Defendants are Delaware limited liability companies, with principal places of business in Denver, Colorado. (Document No. 55, p. 2). "Defendants own and operate thirteen 'Sullivan's Steakhouse' restaurants, including the location Plaintiff worked in," as well as a location in Charlotte, North Carolina. (Document No. 55, p. 3).

The crux of the Complaint is that Defendants performed renovations at their Raleigh restaurant in September 2019, that uncovered mold and made Plaintiff sick. (Document No. 55, pp. 5-6). Plaintiff states that on or about September 30, 2019, her "illness became severe, affecting her ability to work." (Document No. 55, p. 6). Plaintiff contends that instead of informing her of her eligibility to take FMLA leave, Defendants "terminated her employment on October 9, 2019, due to her need to take time off because of her illness." (Document No. 55, p. 7).

"Defendants' Reasserted Motion To Transfer Venue" (Document No. 59) was filed on January 28, 2022; and "Sullivan's Of North Carolina, LLC's Second Amended Motion To Compel Arbitration …" (Document No. 63) and "Defendants MAC Acquisition LLC's And Sullivan's Holding LLC's, … Motion To Compel Arbitration …" (Document No. 64) were filed on February 11, 2022.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Frank D. Whitney.

## II.  STANDARD OF REVIEW

Defendants move to transfer venue in this case pursuant to 28 U.S.C. § 1404(a). Regarding a change of venue, 28 U.S.C. § 1404 provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

3

28 U.S.C. § 1404(a).

Previous decisions by this Court are also instructive here.

> Even if venue in a jurisdiction is proper, a court may "for the convenience of parties and witnesses, in the interest of justice," transfer the action to another district where venue is proper. 28 U.S.C. § 1404(a) (2006). This court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer on an "individualized, case-by-case basis" of convenience and fairness to the parties. AC Controls Co. v. Pomeroy Computer Res., Inc., 284 F.Supp.2d 357, 360 (W.D.N.C. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S.Ct. 2239, 2243 (1988)).

McLeod Addictive Disease Center, Inc. v. Wildata Systems Group, Inc., 3:08-CV-027-GCM 2008 WL 2397614, at *1 (W.D.N.C. June 10, 2008). "The Court emphasizes that the applicable law contemplates that a court's decision to transfer or not transfer venue under 28 U.S.C. § 1404(a) is largely discretionary." 3A Composites USA, Inc. v. United Industries, Inc., 5:13-CV-083-RLV, 2014 WL 1471075, at *1 (W.D.N.C. Apr. 15, 2014); see also Puff Corporation v. Kandypens, Inc., 3:20-CV-333-FDW-DCK, 2020 WL 6704583, at *2 (W.D.N.C. Nov. 13, 2020).

> When considering a motion to transfer, courts should consider, among other things, eleven factors: 1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws. Id. at 96. The factors are accorded different weights based on the court's discretion. Id.

Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 3:02-CV-237-GCM, 264 F.Supp.2d 357, 362 (W.D.N.C. 2003) (citing Jim Crockett Promotions, Inc. v. Action Media Group, Inc., 751 F.Supp.

4

93, 95 (W.D.N.C. 1990)); see also, Cohen v. ZL Technologies, Inc., 3:14-CV-377-FDW-DSC, 2015 WL 93732, at *1-2 (W.D.N.C. Jan. 7, 2015).

### III. DISCUSSION

Defendants seek to transfer venue in this case to the United States District Court for the Eastern District of North Carolina, Western Division. (Document No. 59, p. 1). Defendants note that they collectively first moved for this transfer on September 8, 2021. Id.

Defendants observe that Plaintiff resides, and worked at a Sullivan's Steakhouse location, in Raleigh, North Carolina, which is located in the Eastern District of North Carolina ("E.D.N.C." or "Eastern District") and which is where the E.D.N.C.'s Western Division is based. (Document No. 59, p. 2). Although the Complaint alleges that "the substantial part of the events or omissions giving rise to these claims occurred in this District," Defendants assert that "the Complaint does not contain a single substantive allegation about an event or omission that occurred in this District." (Document No. 55, ¶ 5; Document No. 59, p. 3).

Defendants contend that the eleven factors set forth in the standard of review strongly favor transfer to the E.D.N.C. (Document No. 59, p. 10). See also Nutrition & Fitness, Inc., 264 F.Supp.2d at 362. The undersigned will analyze each factor below.

**A. Plaintiff's Choice of Forum**

Defendants acknowledge that "[a] plaintiff's choice of forum is generally accorded great weight," but contend that such "deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action." (Document No. 59-1, p. 4) (quoting Bannister v. Wal-Mart Stores East, L.P., 843 F.Supp.2d 610, 615 (E.D.N.C. 2012). Defendant argues that this "Court owes no deference to Plaintiff's choice of forum because her claims do not

5

have any substantive relationship to the Western District." See (Document No. 59-1, pp. 5-6) (citations omitted).

Defendants further argue that the allegations in the Complaint actually establish that jurisdiction in the Eastern District is proper and more convenient. (Document No. 59-1, p. 5). Defendants suggest that Plaintiff has engaged in "forum shopping," which should not be indulged. Id. (citing General Tire & Rubber Co. v. Watkins, 373 F.2d 361, 369 (4th Cir. 1967)).

In response, Plaintiff first emphasizes that relevant legal authority gives great weight to a Plaintiff's choice of forum. (Document No. 65, pp. 10-11) (citations omitted). Plaintiff then asserts that "Plaintiff resides in North Carolina, only *two* hours away from this District" and that "Defendant actively engages in and conducts the same operation in its Charlotte-based restaurants as the restaurant at which Plaintiff was employed." (Document No. 65, p. 11). Plaintiff contends that "Defendant SNC maintains its principal place of business within this District." Id. (citing Document No. 55, ¶ 14).

Finally, Plaintiff argues that the case should not be transferred to the E.D.N.C. because "it is just as likely" to then be transferred to Elizabeth City or New Bern, instead of staying in Raleigh, and those locations are "*more remote* areas of the state." Id.

In reply, Defendants argue that all of the factual allegations underlying the Complaint occurred in the Eastern District and that "[c]ontrary to Plaintiff's bizarre argument, districts within a state do not equally share in appropriateness as a forum." (Document No. 66, p. 2). Defendants also disagree with Plaintiff's assertion that Defendants engage in the same operations in their Charlotte restaurant as they do in the Sullivan's Steakhouse in Raleigh. (Document No. 66, pp. 2-3). According to Defendants, the only relevant operations to this lawsuit are the ones that allegedly occurred in Raleigh. (Document No. 66, p. 3).

The undersigned finds that although this factor nearly always favors a plaintiff, in this instance it should be viewed as neutral, or even slightly in favor of transfer. Defendant correctly notes that this case has little, if any, relationship to this district. Plaintiff's response is unpersuasive. Plaintiff relies on the position that because one of Defendants' thirteen restaurants is here, and Charlotte is "only *two* hours" from where Plaintiff resides, the case belongs here instead of in Raleigh.

Not only are Plaintiff's arguments not persuasive, but they also seem to be based on some inaccurate or incomplete information. For example, in the undersigned's experience, confirmed by Google maps, Raleigh is at least 2.5 hours from this courthouse. Similarly, the argument that this case is likely to be transferred to New Bern or Elizabeth City if sent to the Eastern District, is unsupported by any explanation or authority.

Plaintiff also asserts that "Defendant SNC maintains its principal place of business within this District." (Document No. 65, p. 11) (citing Document No. 55, ¶ 14). However, Plaintiff's citation to the Complaint does *not* provide SNC's principal place of business, and that information does not appear to be alleged anywhere else in the Complaint. See (Document No. 55). Instead, the Complaint asserts that Defendants MAC and SH both have principal places of business in Denver, Colorado. (Document No. 55, pp. 2, 4). Even if Defendant SNC has principal place of business in this district, there is no dispute that Plaintiff resides in the Eastern District and that the underlying alleged violations of the FMLA occurred in the Eastern District.

Plaintiff declines to offer any explanation for why she chose this forum instead of the Eastern District; nor does she describe any relevant connection between the events underlying this lawsuit and the Western District of North Carolina ("Western District" or "W.D.N.C."). (Document No. 65).

7

The Court will weigh this factor as neutral.

**B. Residence of the Parties**

Defendant notes that Plaintiff is a resident of Raleigh, North Carolina, and that Sullivan's Steakhouse, where Plaintiff worked is also located in Raleigh, North Carolina. (Document No 59-1, p. 6) (citing Document No. 1, ¶¶ 12, 24, 25). Defendants acknowledge that SNC has principal place of business in the Western District, but assert that "all of the events and witnesses referenced in the Complaint are connected to the restaurant in Raleigh, North Carolina." Id.

Plaintiff's response fails to directly address Defendants' argument regarding residence of the parties. See (Document no. 65, pp. 11-12). However, Plaintiff has elsewhere acknowledged that Plaintiff is a resident of Raleigh, North Carolina, that Defendant SNC has a principal place of business in Charlotte, North Carolina, and that Defendants MAC and SH have principal places of business in Denver, Colorado. (Document No. 55, pp. 2-3); (Document No. 65, p. 5).

The Court will weigh this factor as neutral.

**C. Relative Ease of Access to Evidence**

Defendant argues that the bulk of relevant evidence "is physically located in the Eastern District, where Plaintiff lives and worked, [and] includes documents, physical evidence, corporate witnesses, and third-party witnesses. (Document No. 59-1, p. 6).

Plaintiff contends that Defendants "fail to identify *with any specificity* specific evidence or witnesses that may be inaccessibly located outside the Western District." (Document No. 65, p. 12). Plaintiff further contends that the physical location of the parties' evidence is not important because documents are easily transferable. Id.

The undersigned notes that this lawsuit is focused on Plaintiff's employment in a restaurant in Raleigh, North Carolina and specifically, about the renovation and subsequent safety of that

restaurant after "mold was uncovered in the restaurant, exposing those in the restaurant (including employees) to harmful mold spores." (Document No. 55, pp. 5-6). The factual allegations also include references to Plaintiff's treatment at an Emergency Room in Raleigh, and conversations with the manager of the restaurant in Raleigh. (Document No. 55, pp. 6-7).

The Court will weigh this factor as favoring transfer.

**D. Availability and Attendance of Witnesses**

Defendants contend that availability and/or convenience of the witnesses "is a 'key' factor or the 'most powerful' factor in this analysis." (Document No. 59-1, p. 7) (citing M-Tek Kiosk, Inc. v. Gosnell, No. 3:14-CV-609, 2015 WL 5796830, at *8 (W.D.N.C. Oct. 2, 2015) and Garcia v. 3M Co., 2009 WL 3837243, at *3 (N.D. Cal. Nov. 16, 2009)). Defendant argues that the witnesses identified in the Complaint, the decision-makers at the Sullivan's Steakhouse where Plaintiff worked, and likely other witnesses, are located in the Eastern District. Id. According to Defendants, "Federal courts often recognize that increased travel distances, travel expenses, and the disruption of work and home schedules for key witnesses all add costs of attending and appearing for trial." Id.

Plaintiff contends there is "no inconvenience of travel for either party." (Document No. 65, p. 11). Plaintiff acknowledges that "[w]hile some witnesses *may* be located in Raleigh, many of Defendant's corporate witnesses are located *within this district*." (Document No. 65, p. 12). Plaintiff also seems to suggest that this issue really isn't important because "the need for witnesses to travel is limited to trial, which may or may not ever take place." Id.

Defendants reply brief contends that Plaintiff's argument regarding the likelihood of the need for witnesses at a trial is an improper assumption. (Document No. 66, p. 3). Defendants also argue that Plaintiff fails to explain why corporate witnesses are relevant here and why they would

9

be necessary for her to prove her claims. (Document No. 66, pp. 3-4). In addition, "Defendants contend that all the witnesses with direct knowledge of the alleged events giving rise to Plaintiff's claims work, or worked, at the Raleigh Sullivan's and are, therefore, not located within this District." (Document No. 66, p. 4).

The undersigned agrees that this is a key factor, and that based on Plaintiff's allegations in the Complaint, it strongly favors transfer.

### E. Possibility of a View

Defendants argue that if this case goes to trial, "jurors may be required to view the restaurant in Raleigh to understand the physical set up and the renovations that took place that allegedly made Plaintiff ill." (Document No. 59-1, p. 7). Defendants note that "Charlotte is well over 150 miles from Raleigh where Plaintiff worked." Id.

Plaintiff "does not foresee the same need" for a view of the restaurant, and argues that alternative evidence, such as video footage or photographs, would be sufficient.

The undersigned finds that this factor favors transfer.

### F. Enforceability of a Potential Judgment

The parties agree that a judgment from either District will be enforceable. This factor is neutral.

### G. Relative Advantages and Obstacles to a Fair Trial

The parties agree that this factor is neutral.

### H. Other Practical Problems that Make a Trial, Easy, Expeditious, and Inexpensive

Based on "the overall expense, inconvenience, and logistical challenges associated with transporting witnesses who are physically located in the Eastern District to the Western District in the event of a trial or a hearing," Defendant concludes this factor favors transfer. (Document No.

59-1, p. 80 (citing Speed Trac Technologies, Inc. v. Estes Express Lines, Inc., 567 F.Supp.2d 799, 805 (M.D.N.C. 2008) (for practicality, "transfer would likely reduce the amount of travel-related expenses for the parties and their witnesses" and finding transfer would "not impose any greater burden" on plaintiff); Cohen, 2015 WL 93732, at *2 (finding catch-all eighth factor supported transfer in part because a trial in transferee venue requires less total expense when the parties and witnesses are located there)).

Plaintiff argues that this factor does not favor transfer, because a trial "may or may not ever take place" and even if there is a trial, it could be in Elizabeth City or New Bern. (Document No. 65, p. 14).

The undersigned agrees with Defendants; based on the location of the likely witnesses and the restaurant, as well as Plaintiff and her counsel, venue in the Eastern District, Western Division makes the most sense. This factor favors transfer.

## I. Relative Court Congestion Between Districts

Although the parties disagree as to the extent of the congestion, and the importance of it, it appears that neither side disputes that the Eastern District is currently somewhat more congested than the Western District. Defendants suggest this factor is less important because the parties are likely to be compelled to arbitration. (Document No. 59-1, p. 9). Plaintiff concludes that there is sufficient congestion in the Eastern District to favor retaining her choice of forum.

The undersigned weighs this factor as slightly against transfer.

## J. Interest in Having Localized Controversies Settled at Home

Defendants first note that "Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to operative events." (Document No. 59-1, p. 9) (quoting SpeedTrac Technologies, Inc., 567 F.Supp.2d at 804 (transfer from Middle

11

District to Western District of North Carolina appropriate) (citing In re Volkswagen of Am., Inc., 506 F.3d 376, 387 (5th Cir. 2007))). Therefore, Defendants conclude that this factor heavily favors transfer to the Eastern District "where the primary parties are located, the alleged actions giving rise to this litigation occurred, and where the majority of evidence exists." Id. (citing MCI Constructors, Inc. v. Hazen and Sawyer, P.C., 1998 WL 1034543, at *2 (E.D.N.C. Dec. 30, 1998)).

Plaintiff quotes the same language as Defendants, but summarily concludes that this factor favors venue in this District. (Document No. 65, p. 16) (quoting Sales Consultants of Cary, LLC v. CareerBuilder, LLC, 2008 WL 11381887, at *4 (E.D.N.C. Dec. 2, 2008) (quoting SpeedTrac Technologies, Inc., 567 F.Supp.2d at 804)). Plaintiff then states: "**Plaintiff has brought suit in this District to recover for injuries that Defendants inflicted here by failing to pay Plaintiff for work that was performed in this state**, violations committed by a corporate-defendant that resides in this district." Id. (Emphasis in original).

Defendants' position appears to be more consistent with the agreed-upon legal authority cited above. The federal judicial district or division that clearly has the closest relationship to the operative events is the Eastern District of North Carolina, Western Division. Thus, this factor also favors transfer.

### K. Conflicts of Laws

The parties agree that there is no concern about conflict of laws. This factor is neutral.

### IV. CONCLUSION

In conclusion, of the § 1404 factors, **five** weigh in favor of transfer, **one** weighs against transfer, and **four** are neutral. Even if venue in this district is proper, "[f]or the convenience of parties and witnesses, in the interest of justice," the motion for transfer should be granted. 28

12

U.S.C. § 1404. As such, the undersigned will recommend that the motion to transfer venue to the Western Division of the E.D.N.C. be granted.

The undersigned notes that Plaintiff also alleges in her briefing that Defendants are motivated to transfer venue as "a tactical attempt to transfer this litigation to the Eastern District of North Carolina, the *only* court that *could* compel arbitration, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4)." (Document No. 65, pp. 6-7, n. 1). After careful consideration of the record of this case, the undersigned suspects Plaintiff may have filed her lawsuit in this Court in "a tactical attempt" to avoid arbitration. The briefs related to the motions to compel arbitration indicate that there is a binding arbitration agreement between Defendant SNC and Plaintiff. See (Document No. 63-1).[1] The arbitration agreement states that "the arbitration hearing shall be held in the City in which the Dispute aro[]se, unless the parties both agree otherwise." (Document no. 63-1, p. 8).

Although Defendants appear to present compelling arguments for arbitration, since the undersigned finds that Defendant's motion to transfer should be granted, the undersigned will recommend that the pending motions to compel arbitration be denied, without prejudice to Defendants re-filing those motions in the Eastern District of North Carolina.[2]

---

[1] This case shares some similarities with another case filed by Plaintiff's counsel, Poston, et al., v. Stericycle, Inc., et al., 3:20-CV-655-RJC-DCK. Poston also involves Plaintiffs residing and working in Raleigh, North Carolina, several of whom are subject to an arbitration agreement, but filed their action against their employer with this Court. The undersigned hopes that these similarities are a coincidence, and not an emerging pattern of forum shopping by Plaintiff's counsel. See also Gobena v. CourierNet, Inc., 3:20-CV-290-KDB-DSC (Court granted defendant's motion to dismiss and compel arbitration action brought by Raleigh resident); Cirillo v. Citrix Systems, Inc., 3:20-CV-540-RJC-DSC (Court granted defendant's motion to transfer action brought by Raleigh resident to E.D.N.C.).

[2] The undersigned respectfully encourages Plaintiff to reconsider seeking relief through arbitration and thus avoiding further delay and the expenditure of additional resources of the parties and the courts.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Reasserted Motion To Transfer Venue" (Document No. 59) be **GRANTED**. This matter should be transferred to the United States District Court for the Eastern District of North Carolina, Western Division.

**IT IS FURTHER RECOMMENDED** that "Sullivan's Of North Carolina, LLC's Second Amended Motion To Compel Arbitration And To Either Dismiss, Or Alternatively, To Stay" (Document No. 63) be **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Defendants MAC Acquisition LLC's And Sullivan's Holding LLC, d/b/a Sullivan's Steakhouse's Amended Reasserted Motion To Compel Arbitration And To Either Dismiss, Or Alternatively, To Stay" (Document No. 64) be **DENIED WITHOUT PREJUDICE**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue

with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: May 19, 2022

David C. Keesler
United States Magistrate Judge